■ JACK DINA, Respondent, v LUTHERAN MEDICAL CENTER et al., Appellants, et al., Defendant.—In an action to recover damages for personal injuries based upon medical malpractice and strict products liability, the defendants Lutheran Medical Center and De Puy Division of Biodynamics, separately appeal, as limited by their briefs, from so much of an order of the Supreme Court, Kings County (Pizzuto, J.), dated September 6, 1988, as granted the plaintiff's motion to compel the defendant Lutheran Medical Center to produce for inspection and testing a "jewitt nail".

Ordered that the order is modified, by adding thereto the following language: "(7) that the defendants Lutheran Medical Center and De Puy Division of Biodynamics, Inc. be permitted to have their respective representatives present during the inspection and testing of the 'jewitt nail' by the plaintiff's

expert"; as so modified, the order is affirmed, insofar as appealed from, without costs or disbursements.

On the record before us, it cannot be said that the court improvidently exercised its discretion in granting the plaintiff the opportunity to perform destructive testing of the jewitt nail which is alleged to be defective and to have caused the plaintiff's injuries (cf., Castro v Alden Leeds, Inc., 116 AD2d 549; Di Piano v Yamaha Motor Corp., 106 AD2d 367). However, in order to adequately safeguard the appellants' rights, they will each be permitted to have a representative present when the inspection and testing is conducted (see, Di Giovanni v Pepsico, Inc., 120 AD2d 413; Miller v Haug Co., 96 AD2d 790; Dunne v Zene, 88 AD2d 539). Brown, Sullivan and Rosenblatt, JJ., concur.

Bracken, J., dissents and votes to reverse the order appealed from and to deny the plaintiff's motion with the following memorandum in which Thompson, J. P., concurs. The plaintiff alleges that a defective "jewitt nail" was inserted into his leg during a surgical procedure intended to repair a fracture of the left femur. The plaintiff further alleges that the allegedly defective jewitt nail broke, causing a "re-fracture through the old fracture of the shaft of the left femur". The defendant De Puy Division of Biodynamics, Inc. (hereinafter De Puy) is alleged to have manufactured the jewitt nail in question; the defendants Lutheran Medical Center and Dr. Aldo Vitale are alleged to have been responsible for its improper insertion into the plaintiff's leg.

On the plaintiff's motion, the Supreme Court issued an order which allows the plaintiff, inter alia, to "cut up to ½ of said 'jewitt nail' and its assembly". This partial destruction of the nail was deemed necessary in order to permit the plaintiff's metallurgical expert to conduct a "three dimensional test" involving the use of a "scanner". According to the plaintiff's expert, the chamber of the scanning machine available to him is not large enough to accommodate the nail in its current condition, so that removal of a small portion of the nail is necessary. The "three dimensional testing" of the nail fragment which could then be accomplished through the use of "scanning electron microscopy" would, according to this expert, produce conclusive evidence as to the nail's composition.

I do not agree with the conclusion reached by the Supreme Court that the foregoing circumstances alone warrant the destructive testing of the evidence in question. The two affida-

vits submitted by the plaintiff's expert are sufficient to establish that (1) scanning electron microscopy is *one* scientific technique which might be used in order to determine the nail's composition, and (2) given the apparatus apparently available to the plaintiff's expert, the use of this technique is possible only if the nail is partially destroyed. However, these affidavits completely fail to establish that scanning electron microscopy is the *only* available scientific technique which could be used in order to achieve the results sought, or that all "scanning machines" are, like the one referred to by the plaintiff's expert, incapable of scanning objects equal in size to the subject jewitt nail.

More fundamentally, the affidavits submitted by the plaintiff's expert indicate that there is but one purpose to this destructive testing, i.e., to determine the composition of the jewitt nail. Ordinarily, the composition of any particular product is a matter which, in the regular course of pretrial disclosure, could easily be discovered from the party which in fact manufactured the item in question. In the present case, the defendant De Puy has submitted evidence that it did not manufacture the jewitt nail which the plaintiff claims was defective. Thus, if the plaintiff is unable to determine the composition of the nail in question, that inability may well be due to the plaintiff's failure to identify the proper party as the manufacturer of the nail. Before being allowed to conduct destructive testing of the nail, the plaintiff should be required to produce some evidence that De Puy—contrary to its own assertions—is the manufacturer of the nail and that De Puy is for some reason unable to supply the data concerning the nail's manufacture. If the plaintiff is unable to disprove De Puy's assertion that it did not manufacture the nail, then destructive testing should be allowed only upon a showing that the plaintiff cannot obtain the information sought from the party which did, in fact, manufacture the nail *(see,* CPLR 3101 [a] [4] [governing discovery from nonparties]).

I conclude, in sum, that the plaintiff has failed to show that destructive testing is the only method by which he may obtain the data which he seeks. Destructive testing should be permitted only on the basis of proof that no less drastic alternative method exists by which the information sought may be obtained *(see, Castro v Alden Leeds, Inc.,* 116 AD2d 549, 550-551; *Di Piano v Yamaha Motor Corp.,* 106 AD2d 367; 3A Weinstein-Korn-Miller, NY Civ Prac ¶ 3120.25). The plaintiff failed to make this showing of need. Accordingly, I vote to reverse

the order appealed from, on the law, and to deny the plaintiff's motion.